## Larzelere Company's Appeal.

If instructions amounting to a stay, or a relinquishment of the goods to the debtor in an execution, are given to the sheriff, the plaintiff's right to the proceeds are postponed in favor of subsequent executions.

Where a plaintiff in an execution instructs a sheriff that there is to be

NOTE.—The lien of an execution may be postponed by permitting the defendant to conduct his business. Mulligan v. Barnes, 171 Pa. 53, 32 Atl. 1109; Dunham v. Rundle, 4 Pa. Super. Ct. 174. But if the circumstances negative any fraudulent intent, the execution will retain its priority. Broadhead v. Cornman, 171 Pa. 322, 33 Atl. 360; Meyers v. Rasely, 2 Lanc. L. Rev. 331; Wolf v. Tillinghast, 3 Lack. Jur. 209.

no publicity, and that the defendant is to go ahead and conduct his business as usual and take and keep the money from sales, the plaintiff's right to the proceeds will be postponed in favor of subsequent execution creditors.

(Argued February 3, 1888.   Decided March 19, 1888.)

January Term, 1888, No. 144, E. D., before GORDON, Ch. J., PAXSON, STERRETT, CLARK, and WILLIAMS, JJ.   Appeal from a decree of the Common Pleas of Montgomery County dismissing exceptions to an auditor's report.   Affirmed.

The auditor, Montgomery Evans, Esq., reported as follows:

On March 29, 1887, the Larzelere Company entered in the court of common pleas of Montgomery county a judgment for $916.59 against John L. Ervin, and issued execution thereon, No. 11, June term, 1887.  The writ was lodged with the sheriff at 2.55 P. M. of that day.   James H. Larzelere, the representative of the Larzelere Company, went to the sheriff's office with the writ.   The sheriff asked if there was a suitable person at defendant's store to put in charge and receive the money, and something was said about Mr. Ervin, the defendant.   Mr. Larzelere told the sheriff he was perfectly willing that the defendant should act.   The sheriff made the remark: "I suppose Ervin is an honest man; and if you think it will do, I am satisfied." Mr. Larzelere replied that he was.

The following day judgments were entered and executions issued against John L. Ervin, as follows: by John Wildmyer, No. 13, June term, 1887, for $820; by Andrew Ervin, No. 14, June term, 1887, for $250; No. 15, June term, 1887, for $200.; No. 16, June term, 1887, for $200.   These four writs of fieri facias were placed in the sheriff's hands at 9.30 A. M. of that day.   On the same day Deputy Sheriff Robinson levied upon the personal property of the defendant in Ashbourne, consisting of dry goods, groceries, flour, soap, butter, eggs, and other articles usually kept in a country store.   This levy was made under the five writs in the sheriff's hands.

The deputy placed the goods in charge of Robert Craven, a clerk of the defendant, with instructions to allow nothing to leave the store unless paid for, and to turn over the proceeds to the sheriff.   This was done because of perishable goods in the store. .

On April 5 Mr. Craven paid over $121.91 as the proceeds of

sales made by him; and thereafter the store was closed until sheriff's sale, April 14 and 15, 1887.

After Deputy Robinson had made his levy upon the contents of the store and had placed Mr. Craven in charge and was about to leave, the following letter, written by James H. Larzelere, was handed to him:

Philadelphia, Mch. 29, 1887.

Mr. Kline or Deputy.

Dear Sir: I want you to do nothing to annoy Mr. Ervin or make any publicity. I want him to go ahead and conduct his business as usual; allow him to take and keep the money that comes in. I will take our chances of getting our money out of stock when sale takes place; of course no goods are to go away unless paid for and then only in retail way. Allow them to use teams, etc., as usual.          Larzelere Co.

P. S. Do not let anyone know your business, except the bearer who hands you this, and much oblige.

Larzelere Co.

This letter was delivered by Rev. R. Montgomery. The deputy sheriff made no change in his arrangements after its receipt. The defendant was not in the store after the levy and while it was open in charge of Mr. Craven.

The sheriff made return of levy and sale of the property under all of the writs. John Wildmyer, plaintiff in execution No. 13, June term, 1887, notified the sheriff not to pay over any of the proceeds of the sale, disputing the right of the Larzelere Company to receive the same; and on his motion the money was paid into court and your auditor was appointed to distribute the same, $1,047.79.

Claims for wages, hereto attached, were lodged with the sheriff, as follows:

Arthur M. Nimmo, for wages from February 19, 1887, to April 14, 1887, $27.47;

James E. Cripps, for wages, from November 20, 1886, to January 1, 1887, $9;

Gertrude Howard, for wages, from November 15, 1886, to January 1, 1887, $20;

John L. Ervin, for sixteen days' service, $2 per day, $32.

The first question for decision is the rights of the above claimants to be paid their wages out of the fund. These claims, as filed, lack almost all of the essentials required to be set forth therein; and they have no lien, in the opinion of the auditor, upon the money for distribution. The claims of Arthur M. Nimmo and John L. Ervin cover a period subsequent to the levy. If they performed services during that time, it was for the sheriff—to whom they must look for payment.

The second and more difficult question is: Has the plaintiff in the first execution, by its acts and instructions to the sheriff, forfeited its right to payment to the other execution creditors?

The authorities on this subject are very numerous, but the auditor will refer to but a few of them.

One of the early cases, the principles whereof have been sustained and followed in all subsequent decisions, is Weir v. Hale, 3 Watts & S. 285.

The court says: "In order to make the execution first put into the hands of the sheriff available against those delivered to him subsequently, it is not sufficient that the plaintiff in it has a valid judgment, and that he is entitled to have execution of it; but he must sue out his execution and deliver it to the sheriff, not merely for the purpose of having his debt secured by creating a lien on the personal property of the defendant, or still less of protecting the defendant thereby in the use and enjoyment of it, but for the purpose of having his judgment satisfied by a bona fide execution of the writ. . . . If, therefore, it can be shown that the plaintiff in the execution placed it in the hands of the sheriff, with any other view than that of having it executed bona fide, and it is not so executed, it ought not to be considered good against subsequent executions. . . . But it is true also, if the plaintiff, even without any previous concert or collusion with the defendant, on delivering his execution to the sheriff, directs him to make a seizure of the defendant's personal property, but not to take it from him, or to sell it without further orders, for he expects the debt will be settled or paid without that; or if he give any direction to the like effect, his execution will not be good against subsequent executions at the suit of other creditors. And this would be the case, though the plaintiff may not thereby intend to hinder, delay, or defraud other creditors, but to hasten the debtor merely to pay."

In Com. use of Reynolds v. Stremback, 3 Rawle, 344, 24 Am.

Dec. 351, it is said: "The object of an execution is the satisfaction of the debt and not security for it. The law will not endure the levying an execution on goods only as a security. . . . Suffering goods which are levied on to remain in the possession of the debtor under an arrangement such as the present is fraudulent *per se,* as against the policy of the law. . . . The rule is intended to prevent fraud, and this can be most effectually done by treating the property in the same manner as if no levy had in fact been made. The court will not inquire whether in fact there was fraud or not. It is an inference of law which cannot be rebutted which constitutes the levy, so far as respects third persons, fraudulent *per se.*"

If instructions are given subsequent to the levy that, in effect, amount to a stay or to a relinquishment of the goods to the debtor, the plaintiff's right to the proceeds is postponed in favor of subsequent executions. Eberle v. Mayer, 1 Rawle, 366; Truitt v. Ludwig, 25 Pa. 145; Kauffelt's Appeal, 9 Watts, 334; Dorrance v. Com. 13 Pa. 160.

Where improper directions have been given to the sheriff, the plaintiff must prove positively a revocation before other executions come to hand, to save his lien. Freeburger's Appeal, 40 Pa. 244; Stern's Appeal, 64 Pa. 447.

Again; if the plaintiff in the execution direct the sheriff to leave the goods in the hands of defendant, or his clerk, and permit them to sell at private sale, such arrangement is fraudulent in law, and postpones the execution. Parys's Appeal, 41 Pa. 273, 80 Am. Dec. 615; Keyser's Appeal, 13 Pa. 409, 53 Am. Dec. 487; Bingham v. Young, 10 Pa. 395.

In the case before the auditor, the plaintiff, after leaving the writ with the sheriff, whereby it obtained a valid lien upon defendant's property, gives, through its messenger, written instructions to the deputy after other executions have been issued, that certainly show on their face a different intention than the collection of the money from the defendant in the manner prescribed by law. It instructs the sheriff that there is to be no publicity; the defendant is to go ahead and conduct his business as usual, and take and keep the money from sales, etc.:

Your auditor cannot construe these instructions, taken in connection with what was said and done when the writ was given to the sheriff, so that they will not fall within the condemnation of

the legal principles of the cases cited, and postpone the execution in favor of the other execution creditors, as fraudulent in law.

It should be stated that Mr. Larzelere is called to explain the meaning and intention of the several directions of the letter. It seems clear that unexpressed views and purposes are not evidence. Cake v. Pottsville Bank, 116 Pa. 264, 2 Am. St. Rep. 600, 9 Atl. 302.

It is urged that even though the instructions were improper, they caused no delay, as the sheriff went right on and sold under all the writs.

The auditor understands the law to be: If the conduct or words of the plaintiff show that his object was simply to secure a lien and the defendant was to have rights and privileges inconsistent with the regular and legal execution of the writs, such instructions, as against other executions, were the same in effect as a formal stay of the writ, and as irrevocably, and with like force, inured to the benefit of other creditors. Our supreme court has adhered strictly to the rule requiring the utmost good faith in the use of execution process. And while in Brown's Appeal, 26 Pa. 490, and Landis v. Evans, 113 Pa. 332, 6 Atl. 908, contested executions were sustained, it was on the ground that there was no evidence of improper purpose in the words or acts of the plaintiffs.

To sustain the Larzelere Company's execution would be against the spirit of the authorities; and the auditor, therefore, feels compelled to postpone it in distributing the fund before him.

The following exceptions to the auditor's report were filed:

The auditor erred: (1) In rejecting the evidence which narrated what took place when the writ was placed in the sheriff's hands, which was explanatory of the purpose of the letter; (2) in finding that there was either fraud in law or fact in the conduct and declarations of the plaintiff; (3) in finding that plaintiff only meant to secure a levy and lien, as there were no instructions to delay the making of the sale at all; (4) in not distributing so much of said fund as was necessary to pay the execution of the Larzelere Company; and (5) in distributing said proceeds to the Wildmyer and other executions subsequent in time to the execution of the Larzelere Company.

The court, SCHWARTZ, J., dismissed the exceptions and confirmed the report.

The assignments of error specified the action of the court in dismissing the exceptions to the auditor's report.

*N. H. Larzelere, Richard C. Dale,* and *Samuel Dickson,* for appellant.—There can be no pretense that, under the circumstances, there could be any rational inference that the purpose of the appellant in issuing an execution was to obtain a lien upon the defendant's personal property, and not to sell the same except in the contingency of a subsequent execution. But in order to deprive the appellant of the legal priority as holder of the first execution, such wrongful purpose to misuse an execution must be made to appear. Landis v. Evans, 113 Pa. 332, 6 Atl. 908; McGinnis v. Prieson, 85 Pa. 111.

In the cases where the prior execution has been postponed, the fraudulent purpose of the execution creditor was generally shown by proof of arrangements made with the debtor, showing collusion or other wrongful purpose; but in the present case there is nothing to show any communication between the appellant and the defendants.

The cases cited by the auditor do not apply.

*Bickel & Hobson,* for appellees.—The publicity of judicial sales is, in every aspect in which the matter can be received, a requisite of indispensable necessity, and in accordance with the whole statutory policy on the subject. Secret or private sales of personal property by an officer of the law, charged with execution, is not countenanced by any adjudicated cases in this state. Bingham v. Young, 10 Pa. 395.

Goods levied on should, in a reasonable time thereafter, be taken possession of by the officer of the law, in such a manner as to apprise everybody that they have been taken in execution. Wood v. Vanarsdale, 3 Rawle, 401; Parys's Appeal, 41 Pa. 273, 80 Am. Dec. 615.

It is in contravention of the law to permit the possession and control of the property to remain after the levy as before, it being not only fraud in fact but fraud in law; and although there is no unnecessary delay in making the sale, and no order to delay it, the execution will be postponed. Parys's Appeal, 41 Pa. 273, 80 Am. Dec. 615; Weir v. Hale, 3 Watts & S. 285;

Keyser's Appeal], 13 Pa. 409, 53 Am. Dec. 487; Bingham v. Young, 10 Pa. 395; Truitt v. Ludwig, 25 Pa. 145.

If instructions amounting to a stay or a relinquishment of the goods to the debtor are given to the sheriff, the plaintiff's right to the proceeds are postponed in favor of subsequent executions. Eberle v. Mayer, 1 Rawle, 366; Kauffelt's Appeal, 9 Watts, 334; Dorrance v. Com. 13 Pa. 160.

It is proposed to dull the edge of this notice by endeavoring to introduce testimony explaining what was the intention of the writer of that notice. Such testimony was of course ruled out by the auditor, under authority of Cake v. Pottsville Bank, 116 Pa. 264, 2 Am. St. Rep. 600, 9 Atl. 302.

See also Rowand v. Finney, 96 Pa. 196; Martin v. Berens, 67 Pa. 459.

In Landis v. Evans, 113 Pa. 332, 6 Atl. 908, cited by plaintiff, the plaintiff simply asked a day's delay, and then that the sheriff wait until the afternoon; and he then gave specific instructions to the sheriff to make levy before the second writ was placed in his hands.

Per Curiam:

The report of the learned auditor, in the case before us, is so thoroughly fortified by authority as to render it impregnable; and, as a consequence, we must approve the decree of the court which sustains it.

Decree affirmed and appeal dismissed, at costs of appellant.